# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIGITTE NELSON, | |
| Plaintiff, | CIVIL ACTION NO. 3:17-cv-01050 |
| v. | (SAPORITO, M.J.) |
| ACRE MORTGAGE & FINANCIAL, INC., et al., | |
| Defendants. | |

## **MEMORANDUM**

This federal civil action commenced on November 9, 2016, when the plaintiff, appearing through counsel, filed her original complaint in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1.) The original one-count complaint asserted a federal claim for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. part 1026,[1] the latter of which implemented TILA. The original complaint named five defendants, including Acre

---

[1] The original and amended complaints cite to Regulation Z, 12 C.F.R. part 226, promulgated by the Board of Governors of the Federal Reserve System (the "Board"). But general rulemaking authority with respect to TILA was transferred from the Board to the Consumer Finance Protection Bureau ("CFPB") in 2011. The CFPB then issued its own Regulation Z, 12 C.F.R. part 1026, which was substantially identical to the Board's Regulation Z.

Mortgage & Financial, Inc. ("Acre Mortgage") and Classic Quality Homes ("Classic").

On January 30, 2017, the plaintiff filed her counseled amended complaint. (Doc. 2.) The seven-count amended complaint omitted three of the original defendants, effectively dismissing them from the action. Only Acre Mortgage and Classic remained as defendants. Count One of the amended complaint asserts federal claims for violation of TILA, Regulation Z, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and Regulation X, 24 C.F.R. part 1024,[2] the last of which implemented RESPA. These federal claims in Count One are brought against Acre Mortgage only. The remaining six counts of the amended complaint assert related state-law claims against Acre Mortgage and Classic.

Defendant Classic moved to dismiss or transfer the case for improper venue, arguing that the property at issue was located, and all

---

[2] The amended complaint cites to Regulation X, 24 C.F.R. part 3500, promulgated by the Department of Housing and Urban Development ("HUD"). But all rulemaking authority with respect to RESPA was transferred from HUD to the CFPB in 2011. The CFPB then issued its own Regulation X, 12 C.F.R. part 1024, which was substantially identical to HUD's Regulation X.

relevant events or omissions occurred, in Monroe County, Pennsylvania, which is located within this judicial district, the Middle District of Pennsylvania. (Doc. 11.) On May 2, 2017, the motion was granted, and the case was transferred to this Court. (Doc. 15.)

On March 13, 2019, after discovery was completed but before the dispositive motion deadline, we granted a motion to withdraw filed by plaintiff's counsel. (Doc. 60; *see also* Doc. 52.) On August 16, 2019, after allowing the plaintiff several months to secure new legal representation, we granted the plaintiff's motion to proceed *pro se* in this matter. (Doc. 66; *see also* Doc. 65.)

Acre Mortgage has moved for summary judgment on all claims against it, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 70.) The motion is fully briefed and ripe for decision. (Doc. 71; Doc. 71; Doc. 72; Doc. 76; Doc. 77; Doc. 78; Doc. 79.) Classic has not joined the motion, nor has it filed a dispositive motion of its own.

## I.  BACKGROUND

The plaintiff, Brigitte Nelson, is a retired, disabled military veteran. On November 9, 2015, she purchased a home from the non-moving defendant, Classic. In the process of securing financing for the

home purchase, she grew dissatisfied with another lender and applied for a mortgage with the moving defendant, Acre Mortgage, to which she was referred by Classic. On or before the closing date, Acre Mortgage provided her with: (1) a Truth-in-Lending Disclosure Statement (Doc. 72-10), dated September 24, 2015; (2) an initial Good Faith Estimate (Doc. 72-11), also dated September 24, 2015; (3) a revised Good Faith Estimate (Doc. 72-12), dated October 28, 2015; (4) a Servicing Disclosure Statement (Doc. 72-13, at 2), dated September 24, 2015; (5) a Notice of Servicing Transfer (Doc. 72-13, at 3), dated November 9, 2015; and (6) a Settlement Statement (HUD-1) (Doc. 72-14), dated November 9, 2015.

One year after closing, she filed the instant lawsuit, claiming that Acre Mortgage violated the provisions of TILA and its implementing regulations because: (a) the lender provided disclosures on the wrong forms; (b) the lender failed to disclose local property taxes for which she would be liable; (c) the lender failed to correctly disclose the estimated monthly payments for which she would be responsible; and (d) the lender failed to make a reasonable and good faith determination of her ability to repay the loan. In addition, she claims that Acre Mortgage violated the provisions of RESPA and its implementing regulations because the

lender failed to provide notice of the transfer of its servicing rights to a non-party entity, The Money Source. For relief, Nelson seeks damages and rescission of her mortgage.

Nelson also asserts state-law claims against Acre Mortgage and Classic, seeking damages and rescission of the home sale agreement.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The   party   seeking   summary   judgment   "bears   the   initial

responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. Thus, in evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.   UNDISPUTED MATERIAL FACTS[3]

The plaintiff, Brigitte Nelson, is a veteran of the United States

---

[3] Because we ultimately decline to retain jurisdiction over the plaintiff's state-law claims, we limit our recitation of the undisputed material facts to those concerning the plaintiff's federal claims only.

In her response to Acre Mortgage's statement of undisputed material facts, Nelson qualifies many—if not most—of the defendant's fact statements without specifically admitting or denying them. For the most part, these qualifications do not directly dispute the facts as stated by the defendant, but simply restate them to her own satisfaction. In the few instances where Nelson has contradicted material facts as stated by Acre Mortgage, we have looked to the evidence cited by each party in support of their respective statements. See generally the previous section of this memorandum opinion (citing Fed. R. Civ. P. 56(a), (c), and *Anderson*, 477 U.S. at 251–52). We note that, in addition to particular documentary exhibits, Nelson has often cited to sections of her brief in opposition to summary judgment to support her counter-statements of fact, but "assertions in briefs are not competent evidence unless agreed to by the adverse parties." *Dabone v. Thornburgh*, 734 F. Supp. 195, 199

Army who retired in 2013 after 32 years of honorable military service. Upon retirement, she was classified as a 100-percent disabled veteran. Under a state program, a veteran who is classified as 100-percent disabled may be exempted from paying local property taxes, so long as his or her income falls below a statutory maximum. Applications for this exemption are handled by a county veteran affairs office, but whether the individual veteran satisfies the income-eligibility criteria is determined by officials with the state veterans commission.

In July 2015, Nelson contacted Classic after seeing an advertisement on television for homes to purchase in Monroe County, Pennsylvania. On July 3, 2015, Nelson entered into a contract with Classic to purchase a newly constructed home. After initially contracting to purchase that newly constructed home, she subsequently contracted

---

(E.D. Pa. 1990); *see also Braden v. Univ. of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973) ("We have repeatedly stated that statements in briefs unless specifically admitted by the adversary side cannot be treated as record evidence."); *Prince v. Sun Shipbuilding & Dry Dock Corp.*, 86 F.R.D. 106, 107 (E.D. Pa. 1980) ("[T]he unverified representations of counsel in a brief are not a proper part of the record for consideration on a motion for summary judgment."). To defeat a motion for summary judgment, the nonmoving party must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

to instead purchase an existing home located at 124 Milestone Drive. The 124 Milestone Drive property had been purchased by Classic out of foreclosure and had been, or was to be, renovated.

After she had initially contracted to purchase the newly constructed home from Classic, Nelson had begun the mortgage loan application process with Navy Federal Credit Union. In the course of this process, Nelson became dissatisfied with Navy Federal Credit Union and applied for a mortgage loan from Acre Mortgage instead, to which she had been referred by Classic. On September 24, 2015, she initiated her application with Acre Mortgage when she submitted her financial information to an Acre Mortgage loan officer, Angie Maxwell, over the phone.[4] Nelson

---

[4] In her counter-statement and in her deposition testimony, Nelson appears to take the position that her application for a mortgage loan commenced later, when she first received and signed a written loan application form during an in-person meeting at the offices of Acre Mortgage in October. Based on this, she suggests that her application was improperly backdated to September 24, 2015. But for the purposes of Regulation Z (and TILA), "an application consists of the submission of the consumer's name, the consumer's income, the consumer's social security number to obtain a credit a report, the property address, an estimate of the value of the property, and the mortgage loan amount sought." 12 C.F.R. § 1026.2(a)(3)(ii). "[O]nce a creditor has received [this] information, it has an application for purposes of Regulation Z. A submission may be in written or electronic format and includes a written record of an oral application." 12 C.F.R. pt. 1026, supp. I, pt. 1, cmt. 2(a)(3)–1 (official interpretation of 12 C.F.R. § 1026.2(a)(3)). The evidence

disclosed—and subsequently provided proof of—her income in connection with her mortgage application. She disclosed a monthly income of $7,086.83, including $1,510 in social security disability benefits, $2,906.83 in non-educational veterans benefits, and $2,670 in military pension benefits. She did not disclose any other income.[5] Later, at closing, Nelson signed the loan application form below a statement acknowledging that this income information was true and correct.

Before closing, Nelson received and signed a Truth-in-Lending Disclosure Statement, dated September 24, 2015.[6] (Doc. 72-10.) The disclosure statement disclosed the estimated annual percentage rate of her prospective mortgage loan, the estimated total amount of her

---

of record indicates that, notwithstanding any written forms, Nelson's loan application with Acre Mortgage was initiated on September 24, 2015, when she provided Maxwell with the requisite financial information over the phone. (Doc. 72-1, at 11; *see also* Doc. 72-9, at 7.) Nelson fails to cite any evidence in the record to dispute this date.

[5] In her counter-statement, Nelson avers that she disclosed her educational veterans benefits as well. But she cites no competent record evidence in support. She cites only to a subsequent July 2016 email from a federal official with the U.S. Department of Veterans Affairs to an Acre Mortgage official, which does not address any disclosures made by Nelson.

[6] In her counter-statement, Nelson avers that she received and signed the Truth-in-Lending Disclosure Statement during an in-person meeting at the offices of Acre Mortgage in October. She does not dispute that it was received before the closing.

payments, the estimated amount financed, the estimated finance charge, and her total estimated monthly payment, which included principal, interest, and estimated taxes and insurance. The amount for estimated taxes and insurance was $75, which covered insurance only. It did not include any property taxes due to Nelson's anticipated exemption as a disabled veteran.

Before closing, Nelson received an initial Good Faith Estimate, dated September 24, 2015. (Doc. 72-11.) The initial Good Faith Estimate included a line-item for an initial deposit of $225 into an escrow account to pay future recurring charges, including all property taxes and all insurance. (*Id.*) The form explicitly advised that the escrow account "may or may not cover all of these charges." (*Id.*) Nelson also received a revised Good Faith Estimate, dated October 28, 2015. (Doc. 72-12) The revised Good Faith Estimate included a line-item for an initial deposit of $225 into an escrow account to pay future recurring charges, including all property taxes and all insurance. (*Id.*) The form explicitly advised that the escrow account "may or may not cover all of these charges." (*Id.*) The escrow account deposits reflected on these forms did not include any property taxes due to Nelson's anticipated exemption as a disabled

veteran.

In conducting its due diligence prior to closing, Acre Mortgage consulted Monroe County officials to confirm that property taxes could be excluded. Based on the income information provided by Nelson to Acre Mortgage, county officials informed Acre Mortgage that Nelson should be eligible for the property tax exemption. Nelson had previously spoken with county officials about the tax exemption as well.[7]

Officials at Acre Mortgage remained uncertain about the exclusion of property taxes, and they held a meeting one or two days before the closing. Following the meeting, Acre Mortgage once again contacted county officials to confirm Nelson's eligibility for the tax exemption. The county informed Acre Mortgage that, based on the income information submitted to the lender, she was eligible, but the exemption could not be granted formally until Nelson had title to the property. Based on these multiple consultations with county officials and its own investigation in to the requirements for the property tax exemption, Acre Mortgage concluded that Nelson was eligible and property taxes could be excluded

---

[7] Nelson disputes these fact statements by the defendant, but she fails to cite any competent evidence. *See supra* note 3.

from the loan disclosures and closing documents.[8]

On or before the closing date, Nelson received a Settlement Statement, commonly known as a "HUD-1" statement. (Doc. 72-14.) The HUD-1 indicated that $14,539 in school district property taxes for 2015–2016 had been "paid outside closing" by the seller, and thus it did not include an adjustment to charge a prorated portion of this property tax payment to the buyer. (*Id.*) The HUD-1 indicated that Nelson's loan terms included a monthly payment of $1,377.43 in principal and interest, plus a monthly escrow payment of $103.25 to cover homeowner's insurance, bringing her total monthly payment to $1,480.68. (*Id.*) An unchecked box on the HUD-1 indicated that the escrow payment *did not* include property taxes. (*Id.*)[9]

Before the closing date, Nelson received a Servicing Disclosure Statement from Acre Mortgage advising her that the lender did not service mortgage loans of the type for which she applied, and that the lender intended to assign, sell, or transfer the servicing of her mortgage loan before the first payment was due. (Doc. 72-13, at 2.) Nelson signed

---

[8] *See supra* notes 3, 5, 7.

[9] *See supra* notes 3, 7.

the document to acknowledge its receipt. (*Id.*) Her signature was dated

September 24, 2015.[10] (*Id.*) At the closing, Nelson received a Notice of

Servicing Transfer informing her that, instead of Acre Mortgage, her loan

would be serviced by The Money Source for all payments beginning

January 1, 2016. (Doc. 72-13, at 3.) This notice included the effective date

of the transfer of servicing, the name, address and phone number of both

Acre Mortgage and The Money Source, the date when Acre Mortgage

would cease to accept payments and The Money Source would begin to

accept them, and a statement that the transfer of servicing did not affect

any term or condition of the mortgage loan other than who would be

collecting the loan payments. (*Id.*)[11]

In December 2015, after the closing, Nelson applied for the disabled

veteran property tax exemption. In February 2016, she was notified by

the state veterans commission that she was not eligible for the property

tax exemption for 2015 or 2016 because she received educational benefits

that substantially increased her income for the purposes of this program,

---

[10] At her deposition, Nelson acknowledged that the signature was hers, but testified that the date was written in by someone else. She did not recall having read the document, but she does not dispute having received it on or before the closing date.

[11] *See supra* notes 3, 7.

exceeding the statutory maximum income for eligibility.[12] Nelson requested reconsideration of this decision, and her application was denied on reconsideration by the state veterans commission in March 2016.

Nelson completed a graduate degree program in May 2016 and no longer received educational veterans benefits thereafter. Without the educational veterans benefits, her income fell below the statutory maximum. She reapplied in 2017 and was granted tax-exempt status as a 100-percent disabled veteran effective beginning in 2018.

## IV.   DISCUSSION

The plaintiff claims that Acre Mortgage violated the provisions of TILA, RESPA, and their respective implementing regulations. She claims that Acre Mortgage violated TILA and Regulation Z when it provided disclosures on the wrong forms, failed to disclose local property taxes for which she ultimately would be liable and consequently failed to correctly disclose the estimated monthly payments for which she would be responsible, and failed to make a reasonable and good faith

---

[12] The value of these educational veterans benefits appears to have been reported directly to the state veterans commission by the U.S. Department of Veterans Affairs.

determination of her ability to repay the loan. She claims that Acre Mortgage violated RESPA and Regulation X by failing to provide proper notice of the transfer of its servicing rights to The Money Store.

## A. TILA Claims

"Congress enacted the Truth in Lending Act . . . to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Krieger v. Bank of America, N.A.*, 890 F.3d 429, 432 (3d Cir. 2018). "Historically, Regulation Z of the Board of Governors of the Federal Reserve System (Board), 12 CFR part 226, has implemented TILA." Truth in Lending (Regulation Z), 76 Fed. Reg. 79,768, 79,768 (Dec. 22, 2011). "[T]he Dodd-Frank Act transferred rulemaking authority for TILA to the [Consumer Finance Protection Board (CFPB)], effective July 21, 2011." *Id.* The CFPB subsequently promulgated implementing regulations, also known as Regulation Z, codified at 12 C.F.R. part 1026. The CFPB has also issued official interpretations of these regulations to facilitate the implementation of TILA. *See* 12 C.F.R. pt. 1026, supp. I; *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 242 (4th Cir. 2019).

The Dodd-Frank Act also directed the CFPB "to integrate the mortgage loan disclosures under TILA and RESPA." Integrated Mortgage Disclosures Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth In Lending Act (Regulation Z), 78 Fed. Reg. 79,730, 79,730 (Dec. 31, 2013). Previously, mortgage lenders were required to provide multiple disclosure forms developed by two different agencies charged with implementing TILA and RESPA. *Id.* Consumers often found the forms confusing, and lenders and settlement agencies found them burdensome to provide and explain. *Id.* In discharging this statutory mandate, the CFPB promulgated revisions to Regulation Z, mandating a new set of integrated disclosure forms for mortgage loans for which the lender or mortgage broker receives an application on or after October 3, 2015—the effective date of these revisions. 12 C.F.R. pt. 1026, supp. I, pt. 1, cmt. 1(d)(5)–1 (official interpretation of 12 C.F.R. § 1026.1(d)(5)).

Nelson first claims that Acre Mortgage violated TILA and Regulation Z because it provided her with the old disclosure forms, rather than the new integrated forms. But, as noted above, the moving defendant has adduced evidence that her application was received by

Acre Mortgage on September 24, 2015, and Nelson has failed to cite any competent evidence to the contrary. On the record before us, we find no genuine dispute of material fact with respect to the application date, and thus Acre Mortgage did not use the wrong disclosure forms.

Nelson next claims that Acre Mortgage failed to disclose local property taxes for which she ultimately would be liable, and it consequently failed to correctly disclose the estimated monthly payments for which she would be responsible. Prior to October 3, 2015, Regulation Z required a mortgage lender to "make good faith estimates of the disclosures required by § 1026.18" following receipt of a consumer's written application. 12 C.F.R. § 1026.19(a)(1)(i) (2011) (amended eff. Oct. 3, 2015). These disclosures included "an estimate of the amount of taxes and insurance, including any mortgage insurance, payable with each periodic payment." 12 C.F.R. § 1026.18(s)(3)(i)(C) (2011) (amended eff. Oct. 3, 2015). Regulation Z further provided that, "[i]f any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." 12

C.F.R. § 1026.17(c)(2)(i).[13] The CFPB's official interpretation at the time

provided that:

> Disclosures may be estimated when the exact
> information is unknown at the time disclosures are
> made. Information is unknown if it is not reasonably
> available to the creditor at the time the disclosures are
> made. The "reasonably available" standard requires
> that the creditor, acting in good faith, exercise due
> diligence in obtaining information. . . . The creditor
> normally may rely on the representations of other
> parties in obtaining information.

12 C.F.R. pt. 1026, supp. I, pt. 2, cmt. 17(c)(2)(i)–1 (2014) (amended eff.

Oct. 3, 2015) (official interpretation of 12 C.F.R. § 1026.17(c)(2)(i) (2014)

(amended eff. Oct. 3, 2015)).

As noted above, the moving defendant has adduced evidence that

Nelson failed to disclose her educational veterans benefits as income

when she applied for a mortgage loan with Acre Mortgage, and Nelson

has failed to cite any competent evidence to the contrary. The evidence

adduced by the moving defendant further indicates that Acre Mortgage

relied on the representations of both Nelson and county officials with

respect to her eligibility for the disabled veterans property tax exemption,

---

[13] We note that, although § 1026.17 has been amended, the text of
this subparagraph, § 1026.17(c), was not.

and that Acre Mortgage acted in good faith and exercised due diligence in seeking to determine whether property taxes could be excluded from her estimated monthly payment and other mortgage loan disclosures. The moving defendant has adduced evidence that its TILA disclosures were based on the best information reasonably available at the time the disclosures were provided to Nelson, and the disclosures clearly stated that they were estimates. On the record before us, we find that no reasonable jury could return a verdict in favor of the plaintiff with respect to whether Acre Mortgage adequately disclosed Nelson's local property tax obligations or her estimated monthly payments under the mortgage loan.

Finally, Nelson claims that Acre Mortgage failed to make a reasonable and good faith determination of her ability to repay the mortgage loan. Regulation Z provides that "[a] creditor shall not make a loan that is a covered transaction unless the creditor makes a reasonable and good faith determination at or before consummation that the consumer will have a reasonable ability to repay the loan according to its terms." 12 C.F.R. § 1026.43(c)(1). But, as the official interpretation notes,

> the rule and commentary do not specify how much income is needed to support a particular level of debt or

> how credit history should be weighed against other
> factors. So long as creditors consider the factors set forth
> in § 1026.43(c)(2) according to the requirements of
> § 1026.43(c), creditors are permitted to develop their
> own underwriting standards and make changes to those
> standards over time in response to empirical
> information and changing economic and other
> conditions. Whether a particular ability-to-repay
> determination is reasonable and in good faith will
> depend not only on the underwriting standards adopted
> by the creditor, but on the facts and circumstances of an
> individual extension of credit and how a creditor's
> underwriting standards were applied to those facts and
> circumstances.

12 C.F.R. pt. 1026, supp. I, pt. 3, cmt. 43(c)(1)–1 (official interpretation of

12 C.F.R. § 1026.43(c)(1)). Moreover, "[a] change in the consumer's

circumstances *after* consummation . . . that cannot be reasonably

anticipated from the consumer's application or the records used to

determine repayment ability is not relevant to determining a creditor's

compliance with the rule." *Id.* cmt. 43(c)(1)–2 (emphasis added).

In performing this ability-to-repay evaluation, the lender is

required to consider "[t]he consumer's current or reasonably expected

income or assets," *id.* § 1026.43(c)(2)(i), and to "verify the amounts of

income or assets that the creditor relies on . . . using third-party records

that provide reasonably reliable evidence of the consumer's income or

assets," *id.* § 1026.43(c)(4). The lender is also required to consider "[t]he

- 21 -

consumer's monthly payment for mortgage-related obligations," 12 C.F.R. § 1043(c)(2)(v), which includes expected property taxes, 12 C.F.R. pt. 1026, supp. I, pt. 3, cmt. 43(c)(2)(v)–1 (official interpretation of 12 C.F.R. § 1026.43(c)(2)(v)).

> Estimates of mortgage-related obligations should be based upon information that is known to the creditor at the time the creditor underwrites the mortgage obligation. Information is known if it is reasonably available to the creditor at the time of underwriting the loan. Creditors may rely on guidance provided under comment 17(c)(2)(i)–1 in determining if information is reasonably available.

*Id.* cmt. 43(c)(2)(v)–5.

As noted above, the moving defendant has adduced evidence that Nelson failed to disclose her educational veterans benefits as income when she applied for a mortgage loan with Acre Mortgage, and Nelson has failed to cite any competent evidence to the contrary. The evidence adduced by the moving defendant further indicates that Acre Mortgage relied on the representations of both Nelson and county officials with respect to her eligibility for the disabled veterans property tax exemption, and that Acre Mortgage acted in good faith and exercised due diligence in seeking to determine whether property taxes could be excluded from her estimated monthly payment and other mortgage loan disclosures.

The moving defendant has adduced evidence that its ability-to-repay determination was based on the best information reasonably available at the time of consummation of the loan transaction. The fact that, contrary to the expectations of all parties, Nelson was subsequently deemed ineligible for the property tax exemption by state officials based on her undisclosed educational veterans benefits is immaterial because that information was not—and could not be—known to Acre Mortgage at or before the time of consummation. On the record before us, we find that no reasonable jury could return a verdict in favor of the plaintiff with respect to whether Acre Mortgage made a reasonable and good faith determination at or before consummation that Nelson would have a reasonable ability to repay the loan according to its terms.

### B. RESPA Claims

The plaintiff claims that Acre Mortgage violated RESPA and Regulation X by failing to provide proper notice of the transfer of its servicing rights to The Money Store.

Under RESPA and Regulation X, a mortgage lender or servicer must provide notice of any transfer of servicing of a mortgage loan. 12 C.F.R. § 1024.33(b)(1). The notice must include: the effective date of the

transfer of servicing; the name, address, and telephone number of both the transferee servicer and the transferor servicer, the date(s) on which the transferor servicer will cease to accept payments and the transferee servicer will begin to accept such payments; and a statement that the transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan. *Id.* § 1024.33(b)(4). The notice of transfer must be provided to the borrower "not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan." *Id.* § 1024.33(b)(3)(i). Moreover, "[n]otices of transfer provided at settlement . . . satisfy the timing requirements of paragraph (b)(3) of this section." *Id.* § 1024.33(b)(3)(iii). Prior to October 3, 2015, Regulation X also required a mortgage lender to "provide to the person a servicing disclosure statement that states whether the servicing of the mortgage loan may be assigned, sold, or transferred to any other person at any time." 12 C.F.R. § 1024.33(a) (2014) (amended Oct. 3, 2015).

As noted above, the moving defendant has adduced evidence that Nelson was provided with a Servicing Disclosure Statement dated September 24, 2015, the form and content of which complied with the

requirements of pre-amendment § 1024.33(a), and Nelson has failed to cite any evidence to the contrary. The moving defendant has further adduced evidence that Nelson was provided with a Notice of Servicing Transfer at the closing on November 9, 2015—more than 15 days before the transfer was effective—informing her that her loan would be serviced by The Money Source instead of Acre Mortgage, and that the form, content, and timing of this notice complied with the requirements of § 1024.33(b), and Nelson has failed to cite any evidence to the contrary.

On the record before us, we find that no reasonable jury could return a verdict in favor of the plaintiff with respect to whether Acre Mortgage provided adequate notice of the transfer of the servicing of Nelson's mortgage loan to The Money Source.

### C. Supplemental State-Law Claims

Upon dismissal of the plaintiff's federal TILA and RESPA claims on summary judgment, only her state-law claims against Acre Mortgage and Classic remain.[14]

---

[14] We note that the plaintiff's counseled amended complaint includes civil conspiracy and aiding-and-abetting counts against both defendants. As pleaded in the amended complaint, these are state-law claims. We decline, however, to liberally construe them as federal claims seeking damages from Classic under TILA or RESPA on a conspiracy or

Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Moreover, we note that the Pennsylvania savings statute,

---

aiding-and-abetting theory. For one thing, Nelson was represented by counsel at the time when she filed her amended complaint. *See Ostrowski v. D'Andrea*, Civil Action No. 3:14-cv-00429, 2015 WL 10434888, at *3 (M.D. Pa. Aug. 11, 2015), *report and recommendation adopted by* 2016 WL 862477 (M.D. Pa. Mar. 7, 2016). For another, such relief against a non-lender or non-servicer under TILA or RESPA is unavailable as a matter of law. *See Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973).

42 Pa. Cons. Stat. Ann. § 5103(b), permits the plaintiff to transfer her state-law claims by her own action to state court following dismissal of those claims by this Court for lack of subject matter jurisdiction. *See McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 430–31 (3d Cir. 1983); *Rousseau v. City of Philadelphia*, 589 F. Supp. 961, 974 (E.D. Pa. 1984). *See generally* 42 Pa. Cons. Stat. Ann. § 5103(b)(2) (requiring a plaintiff seeking to transfer claims to promptly file in state court a certified transcript of the final judgment of the federal court together with a certified copy of the pleadings from the federal action).

Accordingly, the plaintiff's state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## V.   CONCLUSION

For the reasons set forth above, Acre Mortgage's motion for summary judgment will be granted in part and denied in part as moot. It will be granted with respect to the plaintiff's TILA and RESPA claims set forth in Count One of the Amended Complaint. The plaintiff's state-law claims against both defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). As a result, the remainder of Acre Mortgage's motion for summary judgment will be denied as moot.

An appropriate order follows.


Dated: September 25, 2020                    **_s/Joseph F. Saporito, Jr._**
                                             JOSEPH F. SAPORITO, JR.
                                             United States Magistrate Judge